IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**SHANNON MCLEAN**                                         **PLAINTIFF**

   **v.**                                                         **No.** 1:19cv122-SA-RP

**MISSISSIPPI STATE UNIVERSITY,
MARK E. KEENUM in his official
capacity as President of Mississippi
State University, DR. ANDREW
MACKIN, DR. GARY J. BURT, and
JULIE BURT**                                           **DEFENDANTS**

**(JURY TRIAL DEMANDED)**

## COMPLAINT

For these reasons, COMES NOW THE PLAINTIFF, by and through her attorney, and alleges as follows:

### JURISDICTION, VENUE, JURY DEMAND

1. This court has jurisdiction under 28 U.S.C. § 1331 because the suit arises under federal law.

2. Venue is proper under 28 U.S.C. § 1391 because the Defendants and all work at issue were located in and around Starkville, Mississippi.

3. A jury trial is demanded on all issues so triable.

### PARTIES

4. Plaintiff Shannon McLean, is a woman and former student of Defendants.

5. Defendant Mississippi State University (MSU) is a former educator of Plaintiff. Defendant can be served at 240 Wise Center Drive, Mississippi State, MS 39762.

1

6. Only Count 1, Title IX, is brought against Defendant MSU. MSU is subject to Title IX, for which there is a valid abrogation of immunity. *See Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992).

7. Defendant Mark E. Keenum is being sued solely in his official capacity as President of Mississippi State University. Only prospective equitable relief concerning violations of federal law is being sought against Mr. Keenum.

8. Defendant Dr. Andrew Mackin is being sued in his individual capacity. He is an educator and veterinarian formerly responsible for the education of the Plaintiff. All counts except Count 1 are brought against Dr. Mackin.

9. Defendant Dr. Gary J. Burt is being sued in his individual capacity. He is an educator and veterinarian formerly responsible for the education of the Plaintiff. All counts except Count 1 are brought against Dr. Burt.

10. Defendant Julie Burt is being sued in her individual capacity. She is an employee of MSU and formerly played a role in the education of the Plaintiff. All counts except Count 1 are brought against Mrs. Burt.

## FACTS

11. Plaintiff Major Shannon McLean, DVM, U.S. Army Veterinary Corps ("Maj. McLean") was hired by Defendants as a Small Animal Internal Medicine resident at the Mississippi State University College of Veterinary Medicine on or about July 2017.

12. Maj. McLean is an active duty Veterinary Corps Officer.

13. Maj. McLean is under the military direction of Dr. Dennis R. Bell COL, VC, Command Veterinarian, Chief, Force Health Protection, US Army Europe, Office of the Command Surgeon.

14. The military sponsored Maj. McLean to further her training at MSU College of Veterinary Medicine to become a better asset to the United States Army.

15. As a resident, Maj. McLean had roles as a teacher, veterinarian, supervisor of staff, and student.

16. In the assessment of teachers, MSU considers - among other things - evaluations completed by the students taught.

17. On information and belief, Maj. McLean's evaluations by her students have been average or better during her residency.

18. Specifically, she had a mean of 4.09 out of 5.00 on the Analysis of Educator Performance dated April 30, 2018 to July 15, 2018.

19. The Analysis of Educator Performance dated July 16, 2018 to January 1, 2019 noted that approximately 80% of students agree/strongly agree that Maj. McLean is a good instructor.

20. On information and belief, her student evaluation scores were better than one or more male residents.

21. As a veterinarian, Maj. McLean's performance is evaluated - in part - based on the timeliness of medical records.

22. On information and belief, Maj. McLean's medical records were about average in their timeliness.

23. In a December 17, 2018, email from Dr. Todd Archer, about 'delinquent medical records', Maj. McLean ranked about average among the eight people discussed.

24. Dr. Archer's email told Maj. McLean: "Good job staying on top of your delinquent medical records".

25. The Front Desk Text Communication logs also show Maj. McLean was consistent and timely in her return communication with staff, clients and other veterinarians.

26. Residency meeting minutes, for May 24, 2018, included positive statements about Maj. McLean's work from staff

    a. 'We have come to enjoy working with her and appreciated her efficiency and direct approach'.

    b. 'We would all want her to be their veterinarian for their personal pets'.

    c. Also in the May 24, 2018, Residency Meeting Minutes, a publication presentation in June of 2019 was discussed.

27. Maj. McLean was terminated by MSU from her residency on or about January 2, 2019.

28. Maj. McLean's character, work ethic, professional abilities and emotional health were stridently criticized in the letter written by Dr. Andrew Mackin to Dr. Dennis R. Bell, COL, VC dated 1/4/19. (Letter)

29. The letter stated her discharge letters were "very late," that she "struggled in teaching and communicating with students," and that she showed "a pattern of

4

not acknowledging or responding to reminder emails and texts from staff responsible for tracking timely communications." It also claimed she had "challenging interpersonal interactions that caused stress for staff, other house officers, and faculty." These claims are untrue and harmed Maj. McLean's reputation and work for the military.

30. Maj. McLean was denied due process in her termination on January 2, 2019.

31. In the meeting with Dr. Mackin on January 2, 2019, Dr. Mackin informed her that Dr. Archer sent an email to the medicine group with a plan to discuss concerns in the new year. Maj. McLean was terminated prior to such meeting.

32. When Maj. McLean asked 'What happens now', at the January 2, 2019 meeting, Dr. Mackin said 'If you could get everything packed up and moved out by tomorrow morning, that would be good."

33. Dr. Mackin also said "that these would have been things to discuss at residency meetings, but there was ultimately no negotiation and the message was made clear to him about her departure."

34. In addition, on information and belief, Mr. Keenum, Dr. Mackin, Dr. Burt, and Ms. Burt suspected that Plaintiff had sent a letter criticizing Defendant MSU to others.

35. In fact, she had not sent the letter at issue.

36. Nonetheless, the mistaken belief by her supervisors caused them to retaliate against her in violation of 42 U.S.C. § 1983.

5

## CAUSE OF ACTION

### COUNT 1: TITLE IX

41. Plaintiff incorporates all allegations set forth in all other sections of this Complaint.

42. Title IX of the Civil Rights Act of 1964 states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

43. Defendants discriminated against Plaintiff on the basis of sex.

44. By discriminating on the basis of her sex, Defendants violated Title IX and harmed Plaintiff.

### COUNT 2: FIRST AMENDMENT: RETALIATION

45. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

46. Defendants are prohibited by 42 U.S.C. § 1983 from retaliating against Plaintiff for engaging in protected speech.

47. Defendants mistakenly believed that Plaintiff had sent critical correspondence about them to others.

48. In retaliation for this mistaken belief, Plaintiff was removed by the Defendants.

49. Defendants' actions constitute unlawful retaliation under the First Amendment.

50. Defendants acted willfully, knowingly, and purposefully and/or with indifference to deprive Plaintiff of her constitutional rights.

51. When Defendants deprived Plaintiff of her constitutional rights, Plaintiff was harmed.

## COUNT 3: DUE PROCESS: LIBERTY INTEREST

51. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

52. Dr. Mackin's letter criticizing Plaintiff harmed Plaintiff's reputation.

53. Dr. Mackin's decision to harm Plaintiff's reputation violated Plaintiff's constitutionally protected liberty interest.

54. Defendants did not provide Plaintiff procedural due process in depriving her of this liberty interest.

55. Such deprivation without process violates the U.S. Constitution.

56. This violation harmed Plaintiff.

## COUNT 4: DUE PROCESS: PROPERTY INTEREST

55. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

56. Plaintiff had a property interest in her continued education at Defendant MSU.

57. Defendants' decision to end Plaintiff's education deprived her of this property interest.

58. Defendants did not provide Plaintiff procedural due process in depriving her of this property interest.

59. Such deprivation without process violates the U.S. Constitution.

60. This violation harmed Plaintiff.

## COUNT 5: SUBSTANTIVE DUE PROCESS

60. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

61. The Plaintiff had substantive due process interest in her continued education at Defendant MSU.

62. Defendants' decision to end Plaintiff's education deprived her of this substantive due process interest.

63. Such deprivation violates the U.S. Constitution.

64. This violation harmed Plaintiff.

## COUNT 6: EQUAL PROTECTION

65. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

66. The Equal Protection Clause of the U.S. Constitution requires that government actors treat similarly situated citizens of different sexes equally unless a government actor can prove an exceedingly persuasive justification for unequal treatment.

67. Defendants, government actors, ended the female Plaintiff's education when they would not have ended a similarly situated male student's education.

68. Defendants did not have an exceedingly persuasive justification for this unequal treatment.

69. Such unequal treatment violates the U.S. Constitution.

70. This violation harmed Plaintiff.

## REMEDIES

Plaintiff seeks all remedies available, including but not limited to the following:

a. A final judgment declaring that the actions of Defendant described herein violate the law as alleged;

b. Lost income or opportunity for earning income;

c. An injunction curing the violations alleged herein, and prohibiting any future similar violations;

d. Any other equitable relief as the court deems appropriate.

e. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from the actions alleged herein;

f. Consequential damages and any other pecuniary harms flowing from the unlawful acts complained of herein;

g. Punitive damages commensurate with the misconduct and necessary to deter violations of the law;

h. Notice given to all students regarding the violations found by this court, and notifying such students of the order entered proscribing any future similar violations;

i. Pre and post judgment interest;

j. Attorney fees;

k. Costs; and

l. Any other relief available under any applicable principle in law or equity.

The foregoing Complaint is respectfully submitted on behalf of Plaintiff by and through counsel:

<u>/s/Joel Dillard</u>　　　Date: <u>June 10, 2019</u>
Joel Dillard
JOEL F. DILLARD, PA
775 N. Congress St.
Jackson, MS 39202
Ph: 601-487-7369
Email: joel@joeldillard.com
M.S. Bar No. 104202
Counsel for Plaintiff